**NOT FOR CITATION OR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

KEVIN JANDA, et al.

      Plaintiffs,

  v.

T-MOBILE, USA, INC.,

      Defendant.

_____/

No. C 05-03729 JSW

**ORDER DENYING T-MOBILE, USA, INC.'S MOTION TO DISMISS AND COMPEL ARBITRATION AND DENYING AS MOOT PLAINTIFFS' MOTION TO STRIKE**

**INTRODUCTION**

    This matter comes before the Court upon consideration of the Motion to Strike Defendant's Affirmative Defense That Plaintiffs' Claims Must Be Arbitrated filed by Plaintiffs Kevin Janda ("Janda") and Manjit Singh ("Singh") (collectively "Plaintiffs") as well as the Motion to Dismiss and Compel Arbitration filed by Defendant T-Mobile, USA, Inc. ("T-Mobile"). Having considered the parties' pleadings and the relevant legal authority and having had the benefit of oral argument, the Court HEREBY DENIES AS MOOT Plaintiffs' Motion to Strike and DENIES T-Mobile's Motion to Dismiss and Compel Arbitration.

**PROCEDURAL HISTORY**

    On July 12, 2005, Plaintiffs filed a Complaint in Alameda County Superior Court. T-Mobile filed a notice of removal on September 15, 2005. (*See* Docket No. 1.) On September

26, 2005, Plaintiffs filed their First Amended Complaint ("FAC") alleging causes of action for violations of California's Consumer Legal Remedies Act ("CLRA"), violations of California Business and Professions Code § 17200, *et seq.* ("Section 17200"), violations of California Business and Professions Code § 17500, *et seq.* ("Section 17500"), and breach of contract on behalf of themselves and a putative class. T-Mobile filed its Answer to the FAC on October 11, 2005.

On December 8, 2005, Plaintiffs moved to strike T-Mobile's third affirmative defense, which asserts that Plaintiffs are bound to arbitrate their claims. On December 15, 2005, T-Mobile moved to dismiss and compel arbitration.

## FACTUAL BACKGROUND[1]

**A.     Plaintiff Manjit Singh**

In or about August 2002, Singh activated wireless telephone service with T-Mobile and has had continuous service since that time. (Declaration of Derek Chang in Support of T-Mobile USA, Inc.'s Motion to Dismiss and Compel Arbitration ("Chang Decl."), ¶ 4.) T-Mobile states that in order to activate his service, Singh would have been required to sign a service agreement. T-Mobile further asserts that Singh's service agreement would have been maintained by the dealer from whom Singh purchased his service. (*See* Chang Decl., ¶ 8, Ex. 3 at 1 (service agreement containing section entitled "Customer Acceptance (Required)").) Singh's signed service agreement is not part of the record; rather, T-Mobile proffers the version of its service agreement in place in August 2002 (hereinafter, "the 2002 Service Agreement").

The 2002 Service Agreement contains the following language, in small but bold font, immediately above the signature line: "You also acknowledge that you have received and reviewed the T-Mobile Terms and Conditions, and agree to be bound by them. ... Disputes are subject to mandatory arbitration in accordance with paragraph 3 on the reverse."[2]

Paragraph 3, in turn, provides in full:

---

[1]     The facts set forth herein are undisputed unless specifically noted.

[2]     The reverse side of the 2002 Service Agreement is captioned "T-Mobile Terms and Conditions." (Chang Decl., Ex. 3 at 2.)

Mandatory Arbitration; Dispute Resolution.  ANY CLAIM OR DISPUTE BETWEEN YOU AND US ARISING UNDER OR IN ANY WAY RELATED TO OR CONCERNING THE AGREEMENT, AND/OR OUR PROVISION TO YOU OF GOODS, SERVICE, OR UNITS SHALL BE SUBMITTED TO FINAL, BINDING ARBITRATION WITH THE AMERICAN ARBITRATION ASSOCIATION ("AAA") PURSUANT TO ITS PUBLISHED WIRELESS INDUSTRY ARBITRATION RULES, INCORPORATED HEREIN BY THIS REFERENCE AND AVAILABLE BY CALLING THE AAA AT 800-778-7879 OR VISITING ITS WEBSITE AT http://www.adr.org. Any arbitration proceeding shall be subject to the choice of law provision in Paragraph 22.  Notice of an arbitration commenced by you must be served on our registered agent.  No party may act as a representative of other claimants or potential claimants in any dispute, and two or more individuals' disputes may not be consolidated or otherwise determined in one proceeding.  An arbitrator may not award relief in excess of or inconsistent with the provisions of the Agreement, order consolidation or arbitration on a classwide basis, or award lost profits, punitive, incidental or consequential damages or any other damages other than the prevailing party's direct damages, except that the arbitrator may order injunctive or declaratory relief pursuant to applicable law.  All administrative expenses of an arbitration will be equally divided between you and Us, except if the claim is less than $1000, you will be obligated to pay only $25.  If the claim is less than $25, We will pay all administrative expenses.  Each party agrees to pay the fees and costs of its own counsel, experts, and witnesses at the arbitration.  Subject to the foregoing limitations on consolidated or classwide proceedings, you agree, however, that if you fail to timely pay amounts due, We may assign your account for collection and the collection agency may pursue such claims in court limited strictly to the collection of the past due debt and any interest or cost of collection permitted by law or the Agreement.  YOU ACKNOWLEDGE AND AGREE THAT THIS ARBITRATION PROVISION CONSTITUTES A WAIVER OF ANY RIGHT TO LOST PROFITS, PUNITIVE, SPECIAL, INDIRECT, INCIDENTAL, CONSEQUENTIAL, OR TREBLE DAMAGES ("DISCLAIMED DAMAGES"), A JURY TRIAL OR PARTICIPATION AS A PLAINTIFF OR AS A CLASS MEMBER IN A CLASS ACTION.  IF FOR ANY REASON THIS ARBITRATION CLAUSE IS DEEMED INAPPLICABLE OR INVALID, YOU AND WE BOTH WAIVE ANY CLAIMS TO RECOVER DISCLAIMED DAMAGES AND ANY RIGHT TO PURSUE, OR PARTICIPATE AS A PLAINTIFF OR AS A CLASS MEMBER IN, CLAIMS ON A CLASSWIDE, CONSOLIDATED, OR REPRESENTATIVE BASIS.

(Chang Decl., Ex. 3.)[3]

In April 2004, Singh exchanged his handset.  (*Id.*, ¶ 10.)  T-Mobile asserts that a copy of the then current T-Mobile Welcome Guide was included with his phone and contained a section

---

[3]      The Court will not speculate as to the exact size of the font, however in the copy of the document provided to the Court, the font size is significantly smaller than the 12 point font used in this Order.

outlining T-Mobile's terms and conditions.  (*Id.*, and Ex. 5.)  Paragraph 1 of those terms and

conditions states:

> [T]he T-Mobile Service Agreement you agreed to, and the terms and
> conditions related to use of any other T-Mobile service (together, the
> "Agreement") govern the use of the Service and your Unit.  These
> Terms and Conditions supersede all earlier versions and, among other
> provisions, impose an early cancellation fee (see paragraph 7) and
> require mandatory arbitration of disputes (see paragraph 3).  If there is
> a conflict between the Agreement and the T-Mobile terms and
> conditions sent with your Unit, the Agreement shall prevail.

(Chang Decl., Ex. 5 at T_M0000796.)  Paragraph 2 provides that activation of service

constitutes acceptance of the "Agreement."  (*Id.*)  Paragraph 3 contains the same

version of the arbitration clause contained in the 2002 Service Agreement.  (*Compare*

Chang Decl., Ex. 3 *with* Chang Decl., Ex. 5 at T_M000796.)

**B.      Plaintiff Kevin Janda.**

On or about March 31, 2005, Janda executed a T-Mobile service agreement

(hereinafter, the "2005 Service Agreement").  (Chang Decl., ¶ 6, Ex. 1.)  The 2005

Service Agreement provides, in pertinent part:

> •     **THIS IS MY CONTRACT WITH T-MOBILE ... FOR
>       WIRELESS SERVICES.**  MY CONTRACT IS CALLED A
>       "SERVICE AGREEMENT" AND IT INCLUDES THIS
>       DOCUMENT, THE SEPARATE T-MOBILE TERMS AND
>       CONDITIONS, AND MY RATE PLAN INFORMATION.
>       THE T-MOBILE TERMS AND CONDITIONS ARE IN MY
>       WELCOME GUIDE OR WERE OTHERWISE PROVIDED
>       TO ME AT THE TIME OF SALE. ...
>
> •     I UNDERSTAND THAT THE SERVICE AGREEMENT
>       AFFECTS MY AND T-MOBILE'S LEGAL RIGHTS.
>       AMONG OTHER THINGS, IT
>
>       ■   **REQUIRES MANDATORY ARBITRATION OF
>           DISPUTES;**
>
>       ■   **REQUIRES MANDATORY WAIVER OF THE
>           RIGHT TO JURY TRIAL AND WAIVER OF ANY
>           ABILITY TO PARTICIPATE IN A CLASS ACTION.**

(*Id.*, emphasis in original.)

Paragraph 3 of the T-Mobile terms and conditions applicable to Janda provides,

in pertinent part:

**United States District Court**

For the Northern District of California

United States District Court

For the Northern District of California

Mandatory Arbitration; Dispute Resolution. YOU WILL FIRST NEGOTIATE WITH US IN GOOD FAITH TO SETTLE ANY CLAIM OR DISPUTE BETWEEN YOU AND US IN ANY WAY RELATED TO OR CONCERNING THE AGREEMENT, OR OUR PROVISION TO YOU OF GOODS, SERVICES, OR UNITS ("CLAIM"). YOU MUST SEND A WRITTEN DESCRIPTION OF YOUR CLAIM TO OUR REGISTERED AGENT (See Sec. 22). IF YOU DO NOT REACH AGREEMENT WITH US WITHIN 30 DAYS, INSTEAD OF SUING IN COURT, YOU AGREE THAT ANY CLAIM MUST BE SUBMITTED TO FINAL, BINDING ARBITRATION WITH THE AMERICAN ARBITRATION ASSOCIATION ("AAA") UNDER ITS PUBLISHED WIRELESS INDUSTRY ARBITRATION RULES, WHICH ARE A PART OF THIS AGREEMENT BY THIS REFERENCE AND WHICH ARE AVAILABLE BY CALLING THE AAA AT 800-778-7879 OR BY VISITING ITS WEBSITE AT http://www.adr.org.

...

Neither you nor we may be a representative of other potential claimants or a class of potential claimants in any dispute, nor may two or more individuals' disputes be consolidated or otherwise determined in one proceeding. While the prohibition on consolidated or class wide proceedings in this Sec. 3 will continue to apply: (a) you may take claims to small claims court, if they qualify for hearing by such court and (b) if you fail to timely pay amounts due, we may assign your account for the collection and the collection agency may pursue such claims in court limited strictly to the collection of the past due debt and any interest or cost of collection permitted by law or the Agreement. YOU AND WE ACKNOWLEDGE AND AGREE THAT THIS SEC. 3 WAIVES ANY RIGHT TO A JURY TRIAL OR PARTICIPATION AS A PLAINTIFF OR AS A CLASS MEMBER IN A CLASS ACTION. IF A COURT OR ARBITRATOR DETERMINES THAT YOUR WAIVER OF YOUR ABILITY TO PURSUE CLASS OR REPRESENTATIVE CLAIMS IS UNENFORCEABLE, THE ARBITRATION AGREEMENT WILL NOT APPLY AND OUR DISPUTE WILL BE RESOLVED BY A COURT OF APPROPRIATE JURISDICTION, OTHER THAN A SMALL CLAIMS COURT. SHOULD ANY OTHER PROVISION OF THIS ARBITRATION AGREEMENT BE DEEMED UNENFORCEABLE, THAT PROVISION SHALL BE REMOVED, AND THE AGREEMENT SHALL OTHERWISE REMAIN BINDING.

(Chang Decl., Ex. 2 at T_M0000042, emphasis in original.)[4]

**ANALYSIS**

**A.     Plaintiffs' Motion to Strike Affirmative Defense**

Federal Rule of Civil Procedure 12(f) provides, in pertinent part, that "[u]pon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules,

---

[4]        *See* note 3, *supra*.

1   upon motion made by a party within 20 days after the service of the pleading upon the party ... the

2   court may order stricken from any pleading any insufficient defense ... ."  Fed. R. Civ. P. 12(f).

3        In their motion, Plaintiffs challenge the legal sufficiency of T-Mobile's affirmative defense

4   on arbitration.  Because the Court is required to address that question in the context of Defendant's

5   motion to dismiss or compel, the Court DENIES AS MOOT Plaintiffs' motion to strike.

6   **B.     T-Mobile's Motion to Dismiss and Compel Arbitration**

7        T-Mobile moves to dismiss Plaintiffs' complaint in favor of arbitration pursuant to their

8   respective arbitration clauses.  Plaintiffs assert that T-Mobile's arbitration clauses are procedurally

9   and substantively unconscionable and, therefore, cannot be enforced.

10       **1.     Applicable Legal Standards.**

11           A written provision in ... a contract evidencing a transaction
            involving commerce to settle by arbitration a controversy
12          thereafter arising out of such contract or transaction, or the
            refusal to perform the whole or any part thereof, ... shall be
13          valid, irrevocable, and enforceable save upon such grounds as
            exist at law or in equity for the revocation of any contract.

14

15  9 U.S.C. § 2.

16       Once a court has determined that an arbitration agreement relates to a transaction involving

17  interstate commerce, thereby falling under the Federal Arbitration Act ("FAA"), a court's only role

18  is to determine whether a valid arbitration agreement exists and whether the scope of the parties'

19  dispute falls within that agreement. *See* 9 U.S.C. § 4; *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,

20  207 F.3d 1126, 1130 (9th Cir. 2000).

21       The FAA represents the "liberal federal policy favoring arbitration agreements" and "any

22  doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses*

23  *H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983).  Under the FAA, if a

24  court determines that the parties have agreed to arbitrate, that the agreement has not been honored,

25  and that the dispute falls within the scope of that agreement, a court must order arbitration. *Prima*

26  *Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 400 (1967).

27       Notwithstanding the liberal policy favoring arbitration, by entering into an arbitration

28  agreement, two parties are entering into a contract. *Volt Info. Sciences, Inc. v. Board of Trustees of*

United States District Court

For the Northern District of California

6

United States District Court

For the Northern District of California

1   *Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989) (noting that arbitration "is a matter of

2   consent, not coercion").  Thus, an arbitration agreement is "subject to all defenses to enforcement

3   that apply to contracts generally."  *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir.

4   2003); *see also Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686 (1996) ("[S]tate law may be

5   applied 'if that law arose to govern issues concerning the validity, revocability, and enforceability of

6   contracts generally.'") (quoting *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987)) (emphasis omitted).

7   "Courts may not, however, invalidate arbitration agreements under state law applicable *only* to

8   arbitration provisions."  *Doctor's Assocs.*, 517 U.S. at 687 (emphasis in original).

9         The Supreme Court recently has reiterated that, with respect to challenges to arbitration

10  agreements, "an arbitration provision is severable from the remainder of the contract."  *Buckeye*

11  *Check Cashing, Inc. v. Cardegna*, __ U.S. __, 126 S.Ct. 1204, 1209 (2006).  Unless a party raises a

12  challenge to the arbitration clause itself, "the issue of the contract's validity is considered by the

13  arbitrator in the first instance."  *Id.*  Therefore, although it is within this Court's province to

14  determine whether a valid agreement to arbitrate exists, disputes over the meaning of specific terms

15  within that agreement are matters for the arbitrator to decide.  *See Howsam v. Dean Witter*

16  *Reynolds, Inc.*, 537 U.S. 79, 84 (2002); *Prima Paint*, 384 U.S. at 403-04 (holding that a "federal

17  court may consider only issues relating to the making and performance of the *agreement to*

18  *arbitrate*") (emphasis added).

19         **2.    The Plaintiffs Agreed to Arbitrate and the Claims Are Within the Scope of the**

20              **Arbitration Clause.**

21         Janda concedes that he signed the 2005 Service Agreement, which incorporates by reference

22  T-Mobile's terms and conditions and states that arbitration is required.  Those terms and conditions,

23  in turn, contain the arbitration clause.  Thus, the Court concludes that an agreement exists between

24  Janda and T-Mobile to arbitrate disputes.

25         Singh argues that T-Mobile has not shown he agreed to arbitrate his claims.  It is undisputed,

26  however, that Singh activated phone service with T-Mobile and exchanged his handset in 2004.

27  According to T-Mobile's terms and conditions, activation of service constitutes acceptance of

28  T-Mobile's terms and conditions, including the arbitration clause.  (*See* Chang Decl., Ex. 4 at

1   T_M0000643, Ex. 5 at T_M0000796.)  The terms and conditions Singh would have received with

2   his original phone and his new handset contain the same arbitration clause contained in the service

3   agreement alleged to be applicable to him.  (*Compare id.*, Ex. 3 *with* Exs. 4, 5.)  As such, the Court

4   concludes that T-Mobile has established that an agreement exists between Singh and T-Mobile to

5   arbitrate disputes.

6       Because Plaintiffs do not dispute that the majority of their claims fall within the arbitration

7   clauses or that they have honored the agreement, unless the arbitration clauses are not enforceable

8   based "upon such grounds as exist at law or in equity for the revocation of any contract," the Court

9   must compel arbitration.[5]

10      **3.      The Arbitration Clauses Should Not Be Enforced.**

11      Plaintiffs contend that the arbitration clauses are unconscionable and, therefore,

12  unenforceable.  Under California law, the "[u]nconscionability analysis begins with an inquiry into

13  whether the contract is one of adhesion."  *Armendariz v. Foundation Health Psychare Servs., Inc.*,

14  24 Cal. 4th 83, 113 (2000).  As the *Armendariz* court explained, a contract of adhesion "'signifies a

15  standardized contract, which, imposed and drafted by the party of superior bargaining strength,

16  relegates to the subscribing party only the opportunity to adhere to the contract or reject it.'"  *Id.*

17  (quoting *Neal v. State Farm Ins. Co.*, 188 Cal. App. 2d 690, 694 (1961)).

18      When a party challenges an arbitration agreement on the basis of unconscionability, that

19  party must demonstrate that the arbitration agreement is both procedurally and substantively

20  unconscionable.  *See id.* at 114.  Although a party must establish both elements, those elements

21  exist on a sliding scale.  *Id.*  "In other words, the more substantively oppressive the contract term,

22  the less evidence of procedural unconscionability is required to come to the conclusion that the term

23  is unenforceable, and vice versa."  *Id.*

24

25

26

27

28      [5]      In light of the Court's ruling denying the motion to compel, the Court does not
reach the issue of whether Plaintiffs' claims for injunctive relief are arbitrable.

8

**United States District Court**

For the Northern District of California

1

      **a.**    **Plaintiffs have met their burden to show that the arbitration clauses are**
2              **procedurally unconscionable.**

3      "Procedural unconscionability addresses the manner in which agreement to the disputed

4 term was sought or obtained, such as unequal bargaining power between the parties and hidden

5 terms included in contracts of adhesion." *Szetela v. Discover Bank*, 97 Cal. App. 4th 1094, 1099

6 (2002); *cf. Armendariz*, 24 Cal. 4th at 114 (procedural element focuses on "oppression" or

7 "surprise").  When a weaker party is presented [a] clause and told to 'take it or leave it' without the

8 opportunity for meaningful negotiation, oppression, and therefore procedural unconscionability"

9 will be present. *Szetela*, 97 Cal. App. 4th at 1100.

10      Plaintiffs argue that the arbitration clauses are procedurally unconscionable primarily on the

11 basis that the "the arbitration provisions ... are contained in form, adhesion contracts."  Although the

12 Service Agreements and Welcome Guides in question would satisfy the definition of an "adhesion

13 contract" as set forth in *Armendariz*, the Court expresses no opinion whether those documents in

14 their *entirety* are unconscionable.  Rather, the Court focuses its analysis on the arbitration clauses,

15 which Plaintiffs also contend are procedurally unconscionable.  *See Buckeye*, 126 S.Ct. at 1209.

16      Plaintiffs claim that the arbitration clauses are procedurally unconscionable because these

17 clauses are buried and in small font in the Welcome Guide that is included in T-Mobile's phone

18 box, rather than on the face of a Service Agreement.  Janda's 2005 Service Agreement states on its

19 face that it requires mandatory arbitration of disputes, mandatory waiver of the right to jury trial,

20 and mandatory waiver of the ability to participate in a class action.  (Chang Decl., Ex. 1.)  However,

21 the entire arbitration clause is not set forth in the 2005 Service Agreement.  Rather, it is contained

22 on page 49 of T-Mobile's over 60 page Welcome Guide.  As to Plaintiff Singh, the front of the 2002

23 Service Agreement states in small but bold font that "[d]isputes are subject to mandatory arbitration

24 in accordance with paragraph 3 on the reverse," and the arbitration clause at issue is set forth in full

25 on the reverse of that agreement, again in small font.  In addition, as with Janda, the arbitration

26 clause is also not set forth until near the end of the Welcome Guide.  Plaintiffs also claim that the

27 arbitration clauses were presented on a take it or leave it basis, and T-Mobile admits that Janda and

28 Singh could not have obtained service without agreeing to arbitrate.

**United States District Court**

For the Northern District of California

1      The Court concludes that on these facts Plaintiffs have set forth sufficient evidence to show

2  that the arbitration clauses applicable to their claims are procedurally unconscionable.

3            **b.**      **Plaintiffs have met their burden to show that the class action waiver**
                            **cannot be enforced.**

4

5      Under California law, the concept of substantive unconscionability relates to the actual

6  terms of the arbitration agreement and whether those terms are "overly harsh" or "one-sided."

7  *Armendariz*, 24 Cal. 4th at 114.  Plaintiffs, contend that the arbitration clauses' prohibitions on class

8  treatment render them substantively unconscionable under the California Supreme Court's holding

9  in *Discover Bank v. Superior Court,* 36 Cal. 4th 148 (2005).  In *Discover Bank*, that court held that,

10  while not all class action waivers are unconscionable,

> when the waiver is found in a consumer contract of adhesion in a
> setting in which disputes between the contracting parties predictably
> involve small amounts of damages, and when it is alleged that the
> party with the superior bargaining power has carried out a scheme to
> deliberately cheat large numbers of consumers out of individually
> small sums of money, then, at least to the extent the obligation at issue
> is governed by California law, the waiver becomes in practice the
> exemption of the party "from responsibility for [its] own fraud, or
> willful injury to the person or property of another." (Civ. Code, §
> 1668.)  Under these circumstances, such waivers are unconscionable
> under California law and should not be enforced.

*Discover Bank*, 36 Cal. 4th at 162-63.  The Court concludes that the rationale of *Discover Bank*

18  applies in this case.

19      It is undisputed that the contracts at issue in this case, as a whole, are standardized consumer

20  contracts which were imposed and drafted by T-Mobile, the party of superior bargaining strength,

21  and the Plaintiffs were provided only the opportunity to adhere to the contract or reject it.  Thus,

22  without expressing an opinion on the *validity* of the Service Agreements and Welcome Guides in

23  their *entirety*, they would satisfy the definition of an adhesion contract as set forth in *Armendariz*.

24  *Armendariz*, 24 Cal. 4th at 113.  Thus, the Court concludes that the first of the three considerations

25  elucidated in *Discover Bank* is satisfied here.  T-Mobile also has not contested that the disputes

26  involved in this case, on an individual basis, involve small amounts of damages.  (*See, e.g.,* Notice

27  of Removal ¶ 5.)  Thus, the second of the three considerations elucidated in *Discover Bank* is

28  satisfied.

10

**United States District Court**

For the Northern District of California

1    The final question the Court must consider is whether the complaints allege "a scheme to

2    deliberately cheat large numbers of consumers out of individually small sums of money." *Discover*

3    *Bank*, 36 Cal. 4th at 163.  In the FAC, Plaintiffs allege that T-Mobile charged a "Universal Service

4    Fund Fee" and/or a "Regulatory Cost Recovery Fee" in addition to the posted and advertised cost of

5    mobile service, which it was not required by law to impose.  Plaintiffs further contend that these

6    fees "were created and imposed by [T-Mobile] on its customers, to cover the cost of" what was in

7    fact an ordinary business expense.  (FAC, ¶¶ 1, 3-9.)  Plaintiffs also allege that T-Mobile charged its

8    customers for telephone calls during a billing period in a billing period other than which the calls

9    were made, *i.e.* for "calls that exceed their monthly allotment of minutes during billing periods

10   other than the billing periods in which the allotment was actually exceeded." (*Id.*, ¶¶ 1, 10-12.)

11   Finally, Plaintiffs contend they were improperly charged for "roaming fees, long distance fees, T-

12   Mobile to T-Mobile fees, and weekend and/or nighttime fees that were supposed to be free of

13   charge." (*Id.*, ¶¶ 1, 13.)

14   Plaintiffs contend that each of these alleged practices violate California laws on unfair

15   competition, consumer protection and false advertising and also constitute breaches of contract.

16   The Court finds these allegations satisfy the last prong of the *Discover Bank* test and concludes that

17   enforcing the class action waiver would effectively exempt T-Mobile "from responsibility for [its]

18   own fraud or willful injury to the person or personal property of another." *Discover Bank*, 36 Cal.

19   4th at 163 (quoting Cal. Civ. Code, § 1668).  *See also Laster v. T-Mobile U.S.A., Inc.*, 407 F. Supp.

20   2d 1181, 11990-92 (S.D. Cal. 2005) (finding class waiver provision in T-Mobile arbitration clause

21   substantively unconscionable under *Discover Bank* and unenforceable where plaintiffs

22   demonstrated procedurally unconscionability).

23   T-Mobile asserts that the holding in *Discover Bank* does not apply to contracts in general

24   and, thus, is preempted by the FAA.  The California Supreme Court expressly rejected this

25   argument after it examined and applied pertinent United States Supreme Court authority on the

26   issue.  *Discover Bank*, 36 Cal. 4th at 163-67.  The Ninth Circuit similarly has rejected the

27   preemption argument. *See Ingle*, 328 F.3d at 1176 n. 15.  Indeed, in *Ingle* the Ninth Circuit rejected

28   the reasoning of the appeals court for the same reason that the California Supreme Court rejected

**United States District Court**

For the Northern District of California

1  the court of appeal's decision, namely that its holding was premised on a conclusion that the

2  prohibition against class actions was substantively unconscionable, a defense applicable to all

3  contracts not just contracts containing arbitration clauses. *Id.*; *cf.AT&T Ting*, 319 F.3d 1126, 1152

4  (9th Cir. 2003) (finding no preemption where trial court's decision was based on findings that

5  agreement at issue was substantively unconscionable, a defense applicable to all contracts).

6      Accordingly, the Court finds that the class action waiver is substantively unconscionable

7  and, therefore, is unenforceable. This finding resolves the motion as to Janda because the express

8  terms of his arbitration agreement provide that, "[i]f a court or arbitrator determines that your

9  waiver of your ability to pursue a class or representative claims is unenforceable, the arbitration

10  agreement will not apply and our dispute will be resolved by a court of appropriate jurisdiction,

11  other than a small claims court." (Chang Decl., Ex. 2.) The arbitration clause applicable to Singh

12  does not, however, contain this language. Thus, the Court must determine whether the class waiver

13  can be severed from the arbitration clause.

       **c.    Singh's arbitration clause is permeated with an unlawful purpose and
              shall not be enforced.**

16      Under California law, "[i]f the central purpose of [a] contract is tainted with illegality, then

17  the contract as a whole cannot be enforced. If the illegality is collateral to the main purpose of the

18  contract, and the illegal provision can be extirpated from the contract by means of severance or

19  restriction, then such severance and restriction are appropriate." *Armendariz*, 24 Cal. 4th at 124. In

20  *Armendariz*, the California Supreme Court declined to sever what it found to be unconscionable

21  provisions of an arbitration agreement because those provisions so permeated the arbitration clause

22  with an unlawful purpose that they could not be severed. *Id.* That court also noted that there was

23  no single provision that the trial court could strike or restrict without having to "in effect, reform the

24  contract, not through severance or restriction, but by augmenting it with additional terms.

25  [California] Civil Code section 1670.5 does not authorize such reformation by augmentation ... ."

26  *Id.* at 125. "Nor do courts have any such power under their inherent limited authority to reform

27  contracts." *Id.* Therefore, the California Supreme Court concluded the trial court had not abused its

28  discretion in voiding the offending arbitration clause in its entirety. *Id.*

United States District Court

For the Northern District of California

1    In addition to the class waiver provision, Singh's arbitration clause provides that "an

2    arbitrator may not award relief in excess of or inconsistent with the provisions of the Agreement ...

3    or award lost profits, punitive, incidental or consequential damages or any other damages other than

4    the prevailing party's direct damages." (Chang Decl., Ex. 3, Ex. 5 at T_M0000796.)  The

5    arbitration clause further provides that "[e]ach party agrees to pay the fees and costs of its own

6    counsel ... at the arbitration," which based on the language above would appear to limit a

7    customer's ability to seek attorneys' fees to which he or she might otherwise be entitled.  (*Id.*)

8    Therefore, to the extent these provisions would deprive an arbitrator to award Singh "authorized

9    remedies, or relief in court that would otherwise be allowable to" him, these provisions are also

10   unconscionable.  *See Independent Ass'n of Mailbox Center Owners v. Superior Court*, 133 Cal.

11   App. 4th 396, 411-12 (2005).[6]  Finally, although neither party focuses on this provision of Singh's

12   arbitration clause, it provides that if it is found to be unenforceable, the parties "waive any claims to

13   recover disclaimed damages and any right to pursue or participate as a plaintiff or as a class member

14   in claims on a classwide, consolidated, or representative basis," *i.e.* T-Mobile attempts to import the

15   unconscionable provisions into the judicial forum.  The Court finds this provision to be

16   unconscionable as well.

17       Accordingly, the Court concludes that the class waiver and limitations on remedies

18   provisions, as well as the fact that T-Mobile attempts to import these unconscionable provisions

19   from the arbitral to the judicial forum so permeates Singh's arbitration clause with an unlawful

20   purpose that these offending provisions cannot be severed or restricted because to do so would

21

22

23       [6]    T-Mobile argues that the Ninth Circuit's holding in *Ting*, precludes this Court
24   from striking the limitations on remedies provisions because these remedies are only
     available under the CLRA.  T-Mobile contends that the FAA preempts application of the
25   CLRA.  *See Ting*, 319 F.3d at 1148.  The Ninth Circuit's holding on preemption, however,
     was based upon the fact that the district court had applied the CLRA's antiwaiver provision
26   to void provisions of the arbitration agreement, something this Court has not done.  *See id.*
     (finding CLRA was not law of general applicability and, therefore, antiwaiver provision of
27   that act was preempted by the FAA).  In contrast, this Court's decision is based upon the fact
     that the provisions are unconscionable, a principle of law applicable to all contracts.  *See id.*
28   at 1149-50 (affirming district court's decision on grounds that offending provisions were
     unconscionable).

13

essentially result in reforming Singh's arbitration clause. *See Armendariz*, 24 Cal. 4th at 124.

Accordingly, the Court concludes that Singh' arbitration clause must be voided in its entirety.

### CONCLUSION

For the foregoing reasons, the Court HEREBY DENIES T-Mobile's motion to compel arbitration and DENIES AS MOOT Plaintiffs' motion to strike. The parties shall appear for a case management conference on Friday, May 26, 2006 at 1:30 p.m. The parties' joint case management conference statement shall be due on Friday, May 19, 2006.

**IT IS SO ORDERED.**

Dated: March 17, 2006

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

United States District Court

For the Northern District of California