**NOT FOR CITATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN JANDA, et al. | No. C 05-03729 JSW |
|     Plaintiffs, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS** |
| v. | |
| T-MOBILE, USA, INC., | |
|     Defendant. | |

**INTRODUCTION**

Now before the Court for consideration is the Motion for Judgment on the Pleadings, filed by Defendant T-Mobile, U.S.A., Inc. ("T-Mobile"). Having considered the parties' papers, relevant legal authority, and the record in this case, the Court HEREBY GRANTS IN PART AND DENIES IN PART the motion for judgment on the pleadings and GRANTS Plaintiffs' leave to amend.

**BACKGROUND**

Plaintiffs, Manjit Singh ("Singh") and Kevin Janda ("Janda") are former T-Mobile customers. Singh activated wireless telephone service with T-Mobile in 2002 and terminated service on or about September 12, 2005. (Second Declaration of Derek Chang, ¶ 4.) Janda activated service in March 2005, and cancelled his service with T-Mobile on April 14, 2005. (*Id.*, ¶ 4.)

In their First Amended Complaint ("FAC"), Plaintiffs, on behalf of themselves and a putative class, bring claims for relief for violations of the California Consumer Legal Remedies Act ("CLRA"), specifically California Civil Code § 1770(a)(9) and § 1770(a)(14), violations of California Business and Professions Code § 17200, *et seq.* ("Section 17200"), violations of California Business and Professions Code § 17500, *et seq.* ("Section 17500"), and breach of contract. (FAC ¶¶ 28-53.) Each of these four claims for relief are based on the following allegations:

First, Plaintiffs allege that T-Mobile imposed a "Universal Service Fund Fee" and/or a "Regulatory Cost Recovery Fee" (collectively the "USF-RCR fees") on its customers. Plaintiffs claim that T-Mobile did not include these fees in its posted and advertised prices for its services and did not disclose them to its customers.[1] (*Id.* ¶¶ 3, 19.) According to Plaintiffs, the USF-RCR fees are ordinary business expenses passed on to T-Mobile's customers in the guise of a government tax, and Plaintiffs allege that T-Mobile was not required by law to impose the fees. (*Id.* ¶¶ 4-6, 9.) Plaintiffs also allege that T-Mobile increased the "amount, cost or percentage rate of the USF-RCR" fees without notice to its customers and without providing its customers any additional services. (*Id.* ¶ 7.)

Second, on information and belief, Plaintiffs allege that T-Mobile charges its customers a "per-minute charge for calls which exceed the total minutes allotted to the customer as part of the advertised price of service," and that T-Mobile did so in "billing periods other than the

---

[1] The Universal Service Fund was created pursuant to the Telecommunications Act of 1996. *See* 47 U.S.C. § 254. Each telecommunications carrier is required to contribute to the fund. *Id.* § 254(d); *see also In re Incomnet, Inc.*, 463 F.3d 1064, 1066 (9th Cir. 2006). Telecommunications carriers are permitted to attempt to recoup the costs of contribution from their customers as a billing line item, but if they do so, they may not mark up USF charges above the relevant contribution factor. *See In the Matter of Federal-State Board on Universal Service*, 17 F.C.C.R. 24952, 24978 ¶¶ 49-54 (2002).

In some of its invoices, T-Mobile includes a section that describes the RCR Fee as a fee that it "elect[s] to collect and retain ... to help recover a portion of our costs incurred to satisfy certain federal government mandates and programs related to customers, including, without limit, wireless number pooling, local number portability and E911. [T-Mobile] may impose the Fee whether or not all or some services are used, or available to [a customer] or in [a customer's] location." (*See* Second Declaration of Derek Chang ("Second Chang Decl."), Ex. 3 at T_M 0000005.)

2

1 billing periods in which the allotment was actually exceeded ("out-of-sync billing")." (*Id.* ¶¶
2 10-12.)

3 Third, Plaintiffs allege that T-Mobile "also charged roaming fees, long distance fees, T-
4 Mobile to T-Mobile fees, weekend and/or nighttime fees that were supposed to be free of
5 charge" (the "free of charge calls"). (*Id.* ¶ 13.) The Court shall address additional facts as
6 necessary in its analysis.

## ANALYSIS

**A.    Legal Standard Applicable to Motion for Judgment on the Pleadings.**

Motions for judgment on the pleadings challenge the legal sufficiency of the claims asserted in the complaint. "For purposes of the motion, the allegations of the non-moving party must be accepted as true. ... Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1990). However, "[t]he court need not ... accept as true allegations that contradict matters properly subject to judicial notice...." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). The Court may grant leave to amend, if amendment would not be an exercise in futility. *See, e.g., Platt Elec. Supply Co. v. EEOF Elec., Inc.*, 522 F.3d 1049, 1060 (9th Cir. 2008).

As a general rule, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(c) motion, but a "court may consider facts that are contained in materials of which the court may take judicial notice." *Heliotrope General, Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 (9th Cir. 1999) (internal quotations and citation omitted). A court may also consider documents attached to the complaint or "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *In re Silicon Graphics Inc. Sec. Litig.,* 183 F.3d 970, 986 (9th Cir. 1999) (internal quotations and citation omitted).

T-Mobile has submitted what it contends are Plaintiffs' contracts, each of Janda's invoices, and some of Singh's invoices in support of its motion. Plaintiffs did not attach their

contracts or invoices to the FAC, but their allegations refer extensively to T-Mobile's "contract." Further, Plaintiffs' contracts are essential to their breach of contract claim. (*See, e.g.*, ¶¶ 24-25, 46-53.) Although Plaintiffs argue about which documents actually constitute their contract, they do not dispute the authenticity of the documents T-Mobile has submitted. Accordingly, the Court may rely on the contracts to resolve this motion. *See, e.g., Smale v. Cellco Partnership*, 547 F. Supp. 2d 1181, 1185 n.4 (W.D. Wash. 2008).

The Court finds the same is true for the invoices. In the *Smale* case, the plaintiffs alleged that the defendant, a wireless phone company, failed to disclose that it would charge them a particular tax and that its failure to do so breached their agreements and violated Washington's Consumer Protection Act. The district court relied on invoices to resolve a motion to dismiss, because it concluded that the complaint implicitly or explicitly referred to the invoices, and because it concluded that the invoices were essential to plaintiffs' non-disclosure claims. *Id.* In this case, Plaintiffs allege that the USF-RCR fees were "ordinary business expense[s]" that T-Mobile "did not include ... in its advertised cost of service, but rather, hid it in its billing statements and made it appear as though it was a government tax imposed on the customer." (FAC ¶ 5.) Thus, Plaintiffs explicitly reference invoices in the FAC, and they are essential to Plaintiffs' claims. Because Plaintiffs do not dispute the authenticity of the invoices, the Court may rely on them in resolving the motion. *Smale*, 547 F. Supp. 2d at 1185 n.4.

**B.     T-Mobile's Motion Is Granted in Part and Denied in Part.[2]**

T-Mobile moves for judgment on the pleadings on the "free of charge" claims for lack of standing and for failure to comply with Federal Rule of Civil Procedure 9(b). However, the free of charge claims form only one component of each Plaintiffs' four claims for relief. Accordingly, the Court shall evaluate T-Mobile's arguments based on all of the facts that form the basis of Plaintiffs' claims for relief.

---

[2] Plaintiffs argue that the Court already passed on the sufficiency of the allegations when it denied T-Mobile's motion to compel arbitration. However, when the Court resolved that motion, contrary to Plaintiffs' assertions, it was not called upon to evaluate whether the facts, if true, stated viable claims for relief.

4

### 1. Standing.

To satisfy the Constitution's standing requirements, a plaintiff must show: (1) "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury must be fairly traceable to the challenged action of the defendant; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *see also Covington v. Jefferson County*, 358 F.3d 626, 637-38 (9th Cir. 2004). When a plaintiff seeks prospective relief, in order to establish standing, he or she must show that there is "a likelihood of future injury." *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000); *see also Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006) (plaintiff must show that he or she is "realistically threatened by *repetition* of the violation") (emphasis in original). "Past exposure to illegal conduct does not itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing, present adverse effects." *Lujan*, 504 U.S. at 564 (internal quotations omitted).

Plaintiffs bear the burden of establishing standing. *Lujan*, 504 U.S. at 561. Thus, to survive T-Mobile's motion, Plaintiffs must allege facts that, if proven, would confer standing upon them. *See Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1140 (9th Cir. 2003); *see also Lujan*, 504 U.S. at 561 (noting that at pleadings stage, "general factual allegations of injury resulting from the defendant's conduct may suffice" to demonstrate standing).

In the Introduction to the FAC, Plaintiffs allege that: (1) T-Mobile charges its customers for the USF-RCR fees and that they have been charged for such fees; (2) that T-Mobile has engaged in out-of-sync billing; (3) and that T-Mobile charges its customers for calls that should have been free. (FAC ¶¶ 3-5, 10-13, 19.) Plaintiffs further allege as a result of this conduct, they "have been injured and suffered damages" and that they were charged for such calls. (*Id.* ¶¶ 17, 25.)

Accepting these allegations as true, and in light of the standards applicable to a motion for judgment on the pleadings, the Court concludes that Plaintiffs sufficiently allege injury for

5

1 purposes of establishing standing. The Court also notes, however, that it is not clear from the
2 invoices that T-Mobile has submitted whether each named Plaintiff was injured by each of the
3 three scenarios outlined above that support Plaintiffs' claims for relief. Because the Court is
4 granting Plaintiffs' leave to amend, the Court reminds Plaintiffs and their counsel of their
5 obligations under Rule 11. If the Plaintiffs cannot, in good faith, allege that they incurred a
6 particular type of charge, including the USF-RCR fees, or that they were injured by out-of-sync
7 billing, they shall not allege such claims in their amended complaint. Rather, the amended
8 complaint should specify the harm each Plaintiff alleges that he has suffered.

9 Plaintiffs also seek injunctive relief. It is undisputed that Plaintiffs are former customers
10 of T-Mobile. Plaintiffs argue that there is no evidence to "support T-Mobile's assertion that
11 Plaintiffs would not purchase service if T-Mobile honestly stated its monthly cost and it was
12 lower than competitors." (Opp. Br. at 19 n.36.) However, Plaintiffs have not included
13 allegations to that effect in the FAC. Thus, Plaintiffs have not alleged facts that demonstrate
14 that they realistically are threatened by repetition of the alleged violations.[3] *See, e.g., Walsh v.*
15 *Nevada Dept. of Human Resources*, 471 F.3d 1033, 1037 (9th Cir. 2006) (finding that plaintiff
16 had no standing to pursue injunctive relief claim where she no longer worked for defendant and
17 where she did not allege in complaint that she was interested in returning to work for
18 defendant); *Deitz*, 2006 WL 3782902 at *4 (concluding plaintiff lacked standing to seek
19 injunctive relief under CLRA where he no longer subscribed to cable services and did not state
20 he would subscribe if challenged practices were enjoined); *cf. Cattie v. Wal-Mart Stores,* 540 F.
21 Supp. 2d 939, 951 (S.D. Cal. 2007) (noting that plaintiff might not have standing to pursue
22 injunctive relief for CLRA claim, where she was aware of truth and did not state that she would
23 purchase product in the future).

---

[3] Plaintiffs argue that they need not show they would be likely to purchase T-Mobile's services in order to establish standing for injunctive relief, and they rely on *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663 (2006) for this proposition. However, this Court is bound to apply the standing requirements of Article III. *See Deitz v. Comcast Corp.*, 2006 WL 3782902 at *4 (N.D. Cal. Dec. 21, 2006).

6

The Court concludes that Plaintiffs have not alleged facts to show that they have standing to pursue injunctive relief. This defect, however, could be cured by amendment. Therefore, the Court shall grant Plaintiffs leave to amend.

**2.    Rule 9(b).**

T-Mobile also moved for judgment on the pleadings on the basis that Plaintiffs have failed to plead their claims with particularity. T-Mobile filed its Answer to the FAC on October 6, 2008, and, thus, its argument that the FAC should be dismissed pursuant to Rule 9(b) rings hollow. In light of the Court's rulings on other aspects of this motion, the Court finds it appropriate to address this argument.[4]

"[I]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). The Ninth Circuit has held that, in order to meet the heightened pleading requirements of Rule 9(b), a plaintiff must include allegations about the time, place, and content of the alleged misrepresentations, as well as an explanation as to why the statement or omission complained of is false or misleading. *See, e.g., Blake v. Dierdorff*, 856 F.2d 1365, 1369 (9th Cir. 1988). However, Rule 9(b)'s particularity requirements must be read in harmony with Rule 8's requirement of a "short and plain" statement of the claim. Thus, the particularity requirement is satisfied if the complaint "identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989); *see also Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir. 2003) ("Rule 9(b) demands that, when averments of fraud are made, the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct ... so that they can defendant against the charge and not just deny that they have done anything wrong.") (internal quotation marks and citations omitted).

Plaintiffs argue that they do not allege fraud claims and, thus, are not required to plead fraud with particularity.

---

[4]    T-Mobile focused its argument on the "free of charge calls" component of Plaintiffs claims for relief. The Court has examined the claims for relief in their entirety in order to determine if Plaintiffs have complied with Rule 9(b).

7

> In cases where fraud is not a necessary element of a claim, a plaintiff may choose nonetheless to allege in the complaint that the defendant has engaged in fraudulent conduct. In some cases, the plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim. In that event, the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b).
>
> ...
>
> In other cases, however, a plaintiff may choose not to allege a unified course of fraudulent conduct in support of a claim, but rather to allege some fraudulent and non-fraudulent conduct. In such cases, only the allegations of fraud are subject to Rule 9(b) are subject to Rule 9(b)'s heightened pleading requirements.

*Vess*, 317 F.3d at 1103-04.

Plaintiffs' claim for relief under the CLRA is based upon allegations that T-Mobile "advertis[ed] goods or services with the intent not to sell them as advertised." In their Section 17200 claim, Plaintiffs incorporate by reference earlier allegations of the complaint, which refer to T-Mobile's allegedly false advertising. Plaintiffs also allege a claim for relief under Section 17500, California's false advertising statute. Moreover, in a declaration in support of their opposition to T-Mobile's motion to compel arbitration, Plaintiffs' counsel swore, under penalty of perjury, that "Plaintiffs allege that defendant T-Mobile deceptively, fraudulently, and improperly billed consumers" for the USF-RCR fee, the out-of-sync billing fees, and the roaming, long-distance, T-Mobile to T-Mobile fees, and weekend and/or nighttime fees, which should have been free. Counsel also swore that "[p]laintiffs have also <u>alleged</u> common law fraud in T-Mobile's practice of charging fees not disclosed to consumers that are added to the advertised calling plan rate for the service after the consumer has contracted for service with T-mobile. In sum, plaintiffs have alleged a scheme (i.e. corporate billing practices) of deceptively and unfairly obtaining small sums of money from consumers each month and each bill ... ." (Docket No. 21 (Declaration of David Breskin, ¶¶ 6-7 (emphasis in original)).)

In *Meinhold v. Sprint Spectrum, L.P.*, 2007 WL 1456141 (E.D. Cal. May 16, 2007), the plaintiff brought claims against the defendant based on allegations that defendant had represented, in its advertisements, that consumers would be charged particular fees only in certain circumstances. *Id.* at * 1. The plaintiff argued that she had been charged for such fees but that none of the circumstances that would allow for the fees existed. The defendant moved

8

1  to dismiss plaintiff's claims under Rule 9(b), and the plaintiff, like Plaintiffs here, argued that
2  she had not alleged claims that sounded in fraud.

3  Relying on *Vess*, *supra*, the district court noted that the plaintiff brought claims under
4  Section 17200 and Section 17500, and it concluded that the basis for plaintiff's claims "[arose]
5  out of a uniform course of alleged fraudulent conduct, specifically, the false and misleading
6  statements allegedly made by defendant through its advertising and marketing." 2007 WL
7  1456141 at *6. The plaintiff, however, neither identified any specific statements that the
8  defendant made nor explained how such statements were fraudulent. She also did "not identify
9  what advertisements she is referring to, when she saw them, where she saw them, or how the
10 statements made in those specific advertisements were untrue or misleading." *Id.* The district
11 court concluded that "[s]uch general allegations are insufficient to give defendant notice of the
12 particular misconduct charged by plaintiff," and it dismissed her claims with leave to amend.

13 Although Plaintiffs assert that T-Mobile has not adequately disclosed fees, the Court
14 concludes that, as in *Meinhold*, Plaintiffs' CLRA and Section 17500 claims are premised upon a
15 uniform course of conduct that sounds in fraud, namely that T-Mobile allegedly advertises
16 calling plans for a specific monthly fee that does reflect the true cost of the plan. Further, it
17 appears that Plaintiffs also rely on these allegations as part of their Section 17200 claim. Yet,
18 as in the *Meinhold* case, Plaintiffs have not identified the specific advertisements they claim are
19 false, and they have not alleged when or where they saw those advertisements. Although
20 Plaintiffs may explain that they believe T-Mobile's advertisements are false because they have
21 been charged for fees that they should not have been charged, the allegations in the FAC
22 premised on false advertising claims do not satisfy the requirements of Rule 9(b). Because this
23 defect can be cured, Plaintiffs shall be granted leave to amend.[5]

---

[5] T-Mobile moved for judgment on the pleadings on Plaintiffs' Section 17500 claim on the basis that the Court could conclude as a matter of law that no reasonable consumer would likely be mislead by T-Mobile's advertising or practices. (*See* Mot. at 12:4-13:22.) However, without allegations about the specific nature of the allegedly false advertisements, the Court cannot determine whether or not a reasonable consumer would be deceived. Accordingly, T-Mobile's motion is DENIED IN PART on that basis.

9

### 3. The CLRA Claim.[6]

In addition to its argument on standing, T-Mobile argues that it is entitled to judgment on the pleadings on the CLRA claim because: (1) Plaintiffs did not provide T-Mobile with the required notice and, thus, cannot pursue a claim for damages; (2) Plaintiffs have not adequately alleged causation and reliance; and (3) T-Mobile adequately disclosed its fees and billing practices. The Court finds the first two arguments to be well taken. Based on the state of the record, resolution of the third argument is premature.

Section 1782 of the California Civil Code provides that a plaintiff shall provide notice of his or her claims at least thirty days before filing an "an action for damages" under the CLRA. Cal. Civ. Code § 1782(a). The statute clarifies that notice is not required for claims seeking only injunctive relief. Cal. Civ. Code § 1782(d). Plaintiffs do not contend they have provided the required notice. Rather, they argue the CLRA claim should not be dismissed because they also seek injunctive relief. In their FAC, Plaintiffs state that they seek "actual damages on all claims." (FAC at 12:22.) Because Plaintiffs did not provide the notice required by Section 1782, a claim for damages is inappropriate. *See Cattie,* 540 F. Supp. 2d at 949-50; *Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1195-96 (S.D. Cal. 2005.) Plaintiffs should not include such a request in the amended complaint permitted by this Order.[7]

---

[6] Both parties have addressed the USF-RCR fees and the out-of-sync billing practices in connection with the CLRA claim. The Court notes that the FAC is not a model of clarity as to which practices Plaintiffs allege fall within the scope of that claim. For example, in the body of the claim for relief, Plaintiffs focus on the out-of-sync billing. (*See, e.g.,* FAC ¶¶ 31-32.) Plaintiffs have, however, incorporated by reference their earlier factual allegations, which do refer to the USF-RCR fees. The Court has construed the CLRA claim to encompass those factual allegations. If Plaintiffs choose to amend the FAC, they should be mindful to enumerate each and every factual basis that supports a claim for relief.

[7] The Court recognizes that the *Deitz* case, the court determined that dismissal with prejudice of a complaint that had prematurely requested damages under the CLRA would be a draconian sanction. However, "'[t]he clear intent of the [CLRA] is to provide and facilitate pre-complaint settlements of consumer actions wherever possible and to establish a limited period during which such settlement may be accomplished.'" *Cattie*, 504 F. Supp. 2d at 950 (quoting *Outboard Marine Corp. v. Superior Court*, 52 Cal. App. 3d 30, 41 (1975)). Further, the court in *Cattie* noted that even though the statute permitted amendment after a complaint seeking injunctive relief is filed, a "literal application" of the notice requirements was the only way to accomplish the CLRA's purpose. *Id.* (citing *Outboard Marine*, 52 Cal. App. 3d at 41); *see also Von Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285, 1304 (S.D. Cal. 2004). As such, the Court respectfully disagrees with the reasoning in

10

Plaintiffs' CLRA claims are premised, in part, upon allegedly false advertisements. (*See* FAC ¶ 14.) Accordingly, Plaintiffs must allege that they relied on the false advertisements. *See Cattie,* 504 F. Supp. 2d at 946-47 (S.D. Cal. 2007) (citing *Caro v. Proctor & Gamble Co.*, 18 Cal. App. 4th 644, 668 (1993)). Relying on *In re Yahoo! Litig.*, 251 F.R.D. 459 (N.D. Cal. 2008), Plaintiffs argue that they have alleged reliance because they allege that they "received cellular telephone services from defendant at a set advertised rate ... and ... paid costs not disclosed in the advertised price of the services." (FAC ¶ 25.) The Court disagrees.

In the *Yahoo!* case, the plaintiffs alleged they purchased advertisement placements from defendant "because of" of the defendants' promises and contractual obligations. *Id.* at 474. In contrast, Plaintiffs have not alleged that they purchased wireless telephone services from T-Mobile because of its advertised prices. Plaintiffs have not alleged facts showing reliance, and their general statements that they suffered injury as a result of T-Mobile's practices are insufficient to do so. *See Cattie*, 504 F. Supp. 2d at 947 (finding that conclusory allegation that plaintiffs had been injured as a result of defendants' false advertisements was insufficient to allege reliance). Accordingly, this claims must be dismissed, but Plaintiffs shall be granted leave to amend, if they can in good faith allege facts to show that they would have standing to pursue injunctive relief.

**4.     Section 17200.**

Pursuant Section 17200, "there are three varieties of unfair competition: practices which are unlawful, unfair or fraudulent." *See Daugherty v. American Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 837 (2006); *see also Albillo v. Intermodal Container Services, Inc.*, 114 Cal. App. 4th 190, 206 (2003) (to state a UCL claim, a "plaintiff must establish that the practice is either unlawful (i.e., is forbidden by law), unfair (i.e., harm to victim outweighs any benefit) or fraudulent (i.e., is likely to deceive members of the public)").

T-Mobile moves for judgment on the pleadings on Plaintiffs' Section 17200 claim, in part, on the basis that Plaintiffs have failed to state a claim for relief on their CLRA claim and, thus, fail to state a claim on the "unlawful" prong of their Section 17200 claim. Because the

*Deitz* and follows *Cattie* and *Laster.*

11

1  Court has concluded that Plaintiffs allegations relating to the allegedly false advertisements are
2  not sufficient to plead a claim for relief under the CLRA or under Section 17500, Plaintiffs have
3  not alleged facts sufficient to state a claim for relief on that basis under Section 17200.  For the
4  reasons set forth above, however, the Court concludes that amendment of the CLRA claim
5  would not be futile.  Accordingly, Plaintiffs also are granted leave to amend their Section 17200
6  claim as well.

7       T-Mobile also moves for judgment on the fraudulent prong, on the basis that Plaintiffs
8  fail to allege causation and reliance and fail to establish that T-Mobile's practices would
9  deceive a reasonable consumer.  Plaintiffs rely on *McKell v. Washington Mutual, Inc.*, 142 Cal.
10 App. 4th 1457 (2006) to argue that the facts alleged are sufficient to state a claim under Section
11 17200.  In the *McKell* case, the plaintiffs' claims were premised on allegations that the
12 defendants overcharged them for underwriting tax services and wire transfer fees in connection
13 with the costs of obtaining home loans.  Specifically, the plaintiffs argued that the defendants
14 marked up the actual costs of these services and that documents, in which the fees were
15 explained, could be read to imply that defendants merely passed along the actual cost of the
16 fees.  *See id.* at 1466-67, 1472.  The court concluded that, if true, the defendant's practice of
17 "charging its customers more for services than the actual cost of those services, with no
18 indication to the customers that they were doing so, may constitute a deceptive business
19 practice." *Id.* at 1472.

20      In this case, it appears that Plaintiffs premise their Section 17200 claim, in part, on
21 allegations that T-Mobile disclosed the USF-RCR fees, the out-of-sync billing, and the free of
22 charge calls in a deceptive manner because they are deliberately obscured within the fine print
23 of the terms and conditions.  *See, e.g., Schnall v. The Hertz Corp.*, 78 Cal. App. 4th 1144, 1163-
24 64 (2000) (concluding plaintiffs stated a UCL claim based on facts that suggested defendants
25 deliberately obscured explanation of fuel service charges).  Similarly, Plaintiffs premise their
26 claims, in part, on allegations that T-Mobile is marking up the USF-RCR fees and that it
27 presents these fees to customers in the guise of a tax, rather than as ordinary business expenses.
28

12

1  If true, that practice also may constitute a deceptive business practice. *McCall*, 142 Cal. App.
2  4th at 1472.

3  The Class Period in this case extends from 1998 forward. T-Mobile's 2002 Service
4  Agreement does not refer to the USF-RCR fee, but its invoices in 2002 make reference to these
5  fees in a section entitled "Tax Summary." (*See, e.g.,* Declaration of David Breskin ("Breskin
6  Decl."), Ex. 4 at T_M 00000118.) In addition, in those invoices, T-Mobile does not state that
7  the USF-RCR fees are fees that it *elected* to impose on consumers. (*Id.* at T_M 0000117.)
8  Further, as set forth below, the record does not include Janda's full contract with T-Mobile.
9  Thus, to the extent Janda, like Singh, asserts claims regarding the manner in which T-Mobile
10 disclosed these fees, the Court does not have a complete record to evaluate whether Janda
11 would be precluded as a matter of law from asserting a Section 17200 claim for relief on this
12 basis. Accordingly, T-Mobile's motion is denied, in part, on this basis.

### 5. Breach of Contract.

14 To state a claim for breach of contract, Plaintiffs must allege: (1) the existence of a
15 contract; (2) that they performed or had an excuse for not-performing under the contract; (3)
16 that T-Mobile breached the contract; and (4) that they were damaged. *See, e.g., First*
17 *Commercial Mortgage Co. v. Reece*, 89 Cal. App. 4th 731, 745 (2001). T-Mobile's motion for
18 judgment on the pleadings focuses on the third element. T-Mobile argues that Plaintiffs do not
19 allege what provision of their contracts it allegedly breached. T-Mobile further argues that, to
20 the extent Plaintiffs allegations rest on the USF-RCR fees and out-of-sync billing, T-Mobile
21 disclosed each of its practices to Plaintiffs and, therefore, did not breach any provisions of the
22 contracts.

23 Janda signed his Service Agreement on March 31, 2005. (Second Chang Decl., Ex. 1 at
24 T_M 0000015.) In a section captioned "<u>CUSTOMER ACCEPTANCE (Required)</u>," Janda
25 acknowledged and agreed, *inter alia*, that:

26 THIS IS MY CONTRACT WITH T-MOBILE USA, INC. FOR WIRELESS
   SERVICES. MY CONTRACT IS CALLED A "SERVICE AGREEMENT"
27 AND IT INCLUDES THIS DOCUMENT, THE SEPARATE T-MOBILE
   TERMS AND CONDITIONS, AND MY RATE PLAN INFORMATION.
28 THE T-MOBILE TERMS AND CONDITIONS ARE IN MY WELCOME
   GUIDE OR WERE OTHERWISE PROVIDED TO ME AT THE TIME OF

13

SALE, MY RATE PLAN INFORMATION WAS PROVIDED TO ME AT THE TIME OF SALE.  BY SIGNING I ACKNOWLEDGE THAT I HAVE RECEIVED AND READ THIS DOCUMENT, THE T-MOBILE TERMS AND CONDITIONS, AND MY RATE PLAN INFORMATION.

(*Id.* (emphasis in original).  Although T-Mobile includes the Service Agreement and the applicable terms and conditions with its motion, it has not included the Rate Plan.  Because, the Court does not have Janda's entire contract in the record, it cannot evaluate T-Mobile's claims that it did not breach Janda's contract.

Singh activated service with T-Mobile in August 2002.  Although T-Mobile has not been able to locate Singh's actual signed agreement, it is undisputed that he would have had to sign such an agreement to obtain service.  The 2002 Service Agreement contains the following language, in small but bold font, immediately above the signature line: "You also acknowledge that you have received and reviewed the T-Mobile Terms and Conditions, and agree to be bound by them."  The reverse side of the 2002 Service Agreement is captioned "T-Mobile Terms and Conditions."  (*Id.*, Ex. 4.)  Paragraph 13 of those terms and conditions states is captioned "Taxes," and states that "[a]ny applicable sales, use, excise, public utility or other taxes, fees or regulatory costs, including without limitation E911-related fees or costs, or charges imposed on your or Us as a result of providing the Service or your Unit ("Taxes") will be added to your charges as permitted or required by law."  (*Id.*)  T-Mobile's 2004 Terms and Conditions use similar language.  (*See* Second Chang Decl., Ex. 6 ¶ 13.)

As part of his breach of contract claim, Singh alleges that he was charged the USF fee which is not a tax and which is not related to providing his service.  The 2002 Service Agreement and the 2002 and 2004 Terms and Conditions do not contradict those allegations.  Because the invoices are not a part of the contract, the Court concludes that Singh has alleged facts sufficient to state a claim for breach of contract.  Further, because Singh alleges facts to support his claim for breach of contract, the Court need not address the remainder of T-Mobile's arguments.  This ruling is without prejudice to T-Mobile raising these arguments in a motion for summary judgment or in a motion for summary adjudication of issues.

**CONCLUSION**

For the foregoing reasons, T-Mobile's motion for judgment on the pleadings is granted in part and denied in part. Plaintiffs shall be granted leave to amend on the terms set forth in this Order.

Plaintiffs shall file their amended complaint by no later than December 5, 2008. T-Mobile shall file its answer or responsive pleading within twenty (20) days thereafter. If Plaintiffs fail to file an amended complaint, the Court shall dismiss this matter.

The Court FURTHER ORDERS that the parties shall appear for a case management conference on Friday, February 6, 2009 at 1:30 p.m.

**IT IS SO ORDERED.**

Dated: November 7, 2008

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE