United States District Court

For the Northern District of California

1

2

3

4

5

6                                    **NOT FOR CITATION**

7                          IN THE UNITED STATES DISTRICT COURT

8                          FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10

KEVIN JANDA, et al.

11              Plaintiffs,                          No. C 05-03729 JSW

12       v.                                          **ORDER GRANTING**
                                                     **DEFENDANT'S MOTION TO**
13  T-MOBILE, USA, INC.,                             **DISMISS PLAINTIFF'S SECOND**
                                                     **AMENDED COMPLAINT WITH**
14              Defendant.                           **PREJUDICE**

15

16  _____ /

17                                   **INTRODUCTION**

18          Now before the Court for consideration is the Motion to Dismiss Plaintiffs' Second

19  Amended Complaint, filed by Defendant T-Mobile, U.S.A., Inc. ("T-Mobile").  Having

20  considered the parties' papers, relevant legal authority, the record in this case, and having had

21  the benefit of oral argument, the Court HEREBY GRANTS the motion to dismiss and dismisses

22  this action with prejudice.

23                                   **BACKGROUND**

24  **A.      Procedural History.**

25          On July 12, 2005, Plaintiffs, Manjit Singh ("Singh") and Kevin Janda ("Janda")

26  (collectively "Plaintiffs"), filed their original complaint in Alameda County Superior Court.  T-

27  Mobile removed the action to this Court on September 15, 2005.  (Docket No. 1.)  On

28  September 26, 2005, Plaintiffs filed an Amended Complaint.  (Docket No. 6.)  On October 6,

United States District Court

For the Northern District of California

1   2005, T-Mobile filed its answer, and on December 8, 2005, Plaintiffs moved to strike

2   T-Mobile's affirmative defense that the Plaintiffs should be compelled to arbitrate their claims.

3   (Docket Nos. 13, 20.)  On December 15, 2005, T-Mobile moved to compel arbitration.  (Docket

4   No. 25.)  The Court denied that motion on March 17, 2006, and the Ninth Circuit Court of

5   Appeals affirmed that ruling on February 25, 2008.  (Docket Nos. 51, 52, 76, 77.)

6        On June 20, 2008, T-Mobile moved for judgment on the pleadings.  (Docket No. 85.)

7   On August 7, 2008, Plaintiffs moved to transfer the action to the United States District Court for

8   the Western District of Washington so that this action could be joined with *Lowden v. T-Mobile*,

9   No. C-05-1482-MJP ("*Lowden*").  In the alternative, Plaintiffs moved to stay this action

10  pending a ruling on a motion for class certification in *Lowden*.  (Docket No. 95.)  On October 8,

11  2008, the Court denied Plaintiffs' motion to transfer or stay.  (Docket No. 108.)  On November

12  7, 2008, the Court granted in part and denied in part T-Mobile's motion for judgment on the

13  pleadings and gave Plaintiffs leave to amend their claims.  (Docket No. 109 (hereinafter "the

14  Nov. 7 Order").)

15       On December 4, 2008, Plaintiffs filed their Second Amended Complaint ("SAC") on

16  behalf of themselves and a putative class.  (Docket No. 110.)  Plaintiffs assert claims for relief

17  for violations of the California Consumer Legal Remedies Act ("CLRA"), violations of

18  California Business and Professions Code § 17500 ("Section 17500"), violations of California

19  Business and Professions Code § 17200 ("Section 17200"), and breach of contract.  (SAC ¶¶

20  96-137.)

21  **B.    Factual Background.**

22       Each of Plaintiffs' four claims for relief arise out of the fact that T-Mobile charges a

23  Universal Service Fund Fee ("USF Fee") and a "Regulatory Program Fee" (the "RPF Fee"),

24  which Plaintiffs contend were "not included in the posted and advertised prices of [T-Mobile's]

25  services and not disclosed to customers."[1]  (SAC ¶¶ 3-4.)

26  

27       [1]    The Universal Service Fund was created pursuant to the Telecommunications
    Act of 1996.  *See* 47 U.S.C. § 254.  Each telecommunications carrier is required to contribute
28  to the fund.  *Id.* § 254(d); *see also In re Incomnet, Inc.*, 463 F.3d 1064, 1066 (9th Cir. 2006).
    Telecommunications carriers are permitted to attempt to recoup the costs of contribution

1

**1.     Plaintiff Singh.**

2      Singh activated wireless telephone service with T-Mobile in 2002 and terminated

3  service on or about September 12, 2005.[2]  (SAC ¶¶ 28, 129; Docket No. 87 (Second Declaration

4  of Derek Chang in Support of T-Mobile's Motion for Judgment on the Pleadings ("Chang

5  Decl."), ¶ 4).)  Singh alleges that, when he entered into his contract, the T-Mobile

6  "representative advertised the calling plan or rate plan [Singh] was purchasing as a plan for a

7  specific monthly charge, fee or price for up to a specific number of minute [and] filled out the

8  blanks in the standard form T-Mobile Service Agreement."  (SAC ¶ 30.)[3]

9      The 2002 Service Agreement contains the following language, in small but bold font,

10  immediately above the signature line: "You also acknowledge that you have received and

11  reviewed the T-Mobile Terms and Conditions, and agree to be bound by them."[4]  The reverse

12

13  from their customers as a billing line item but, if they do so, "the amount of the federal
    universal service line item charge may not exceed the interstate telecommunications portion
14  of that customer's bill times the relevant contribution factor."  47 C.F.R. § 54.712(a); *see
    also In the Matter of Federal-State Board on Universal Service*, 17 F.C.C.R. 24952, 24978
15  ¶¶ 49-54 (2002).  Plaintiffs contend that paragraph 10 of the SAC alleges that T-Mobile
    improperly marked up that fee.  Paragraph 10 does not expressly allege that T-Mobile
16  marked up the USF Fee, and the Court concludes that such an allegation cannot be
    reasonably inferred from the facts alleged therein.  Accordingly, Plaintiffs cannot premise a
17  Section 17200 claim on those allegations.

18      [2]     T-Mobile has not been able to locate Singh's signed agreement.  It is
    undisputed that he would have had to sign such an agreement to obtain service.
19

20      [3]     Plaintiffs allege that Janda was a third party beneficiary of that contract.  "A
    contract, made expressly for the benefit of a third person, may be enforced by him at any
21  time before the parties thereto rescind it."  Cal. Civ. Code § 1559.  The term "expressly,"
    means "in an express manner; in direct or unmistakable terms; explicitly; definitely;
22  directly."  *Smith v. Microskills San Diego, L.P.*, 153 Cal. App. 4th 892, 898 (2007).  There is
    nothing in Singh's contract with T-Mobile that demonstrates an "express" intent to benefit
23  Janda.

24      [4]     The 2002 Service Agreement is attached as Exhibit 4 to the Chang
    Declaration and as Exhibit 4 to the Declaration of Stephen Rummage in Opposition to
25  Plaintiffs' Motion to Transfer (Docket No. 102).  Plaintiffs did not attach their contracts or
    invoices to the SAC, but their allegations refer extensively to T-Mobile's "contract" and to
26  T-Mobile's billing practices.  Further, Plaintiffs' contracts and the invoices are essential to
    their claims for breach of contract and deceptive billing practices.  (*See, e.g.,* SAC ¶¶ 55-62,
27  75.)

28      Documents whose contents are alleged in a complaint and whose authenticity no
    party questions, but which are not physically attached to the pleading, may be considered in
    ruling on a Rule 12(b)(6) motion to dismiss.  Such consideration does not convert the motion

*United States District Court*
For the Northern District of California

side of the 2002 Service Agreement is captioned "T-Mobile Terms and Conditions."  Paragraph

13, captioned "Taxes," states that "[a]ny applicable sales, use, excise, public utility or other

taxes, fees or regulatory costs, including without limitation E911-related fees or costs, *or

charges imposed on you or Us as a result of providing the Service or your Unit ("Taxes") will

be added to your charges as permitted or required by law.*"  (2002 Service Agreement ¶ 13

(emphasis added).)  In 2004, Singh exchanged his handset.  T-Mobile asserts that a copy of the

then current T-Mobile Welcome Guide, which contained T-Mobile's Terms and Conditions,

was included with his phone.  T-Mobile's 2004 Terms and Conditions contain a provision

regarding taxes that is similar to the 2002 version of the Terms and Conditions.  (*See* Chang

Decl., ¶ 11, Ex. 6 at T_M0000797.)

In October 2002, T-Mobile's invoices contained a section entitled "Taxes and Fees,"

which provides, in part, that a customer's billing address is "used to bill federal, state and local

taxes *and fees* that T-Mobile is required, *or permitted*, to collect from you ("Taxes")."  (Docket

No. 100 (Declaration of David Breskin in Support of Plaintiff's Response to Defendant's

Motion for Judgment on the Pleadings ("Breskin Decl."), ¶ 5, Ex. 4 at T_M0000117 (emphasis

added)).)  The USF Fee is included as a line item on the invoices under the heading "Tax

Summary."  (*Id.* at T_M0000118.)

By March 2004, T-Mobile's invoices contained a section captioned "Taxes, Surcharges

and Assessments," which stated that the section included "applicable federal, state and local

taxes, surcharges and *assessments that have been imposed on you or T-Mobile related to your

service*."  (Chang Decl., Ex. 7 at T_M0000255 (emphasis added).)  T-Mobile advised that it

collected "these taxes, surcharges and assessments as permitted or required by law and remit

them to the appropriate governmental entity.  This section also includes the Regulatory

to dismiss into a motion for summary judgment. *See United States v. Ritchie*, 343 F.3d 903,
908 (9th Cir. 2003); *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).  Accordingly, the
Court may rely on the contracts and the invoices, which have been filed with the Court in
connection with previous motions, to resolve the instant motion. *See, e.g., Smale v. Cellco
Partnership*, 547 F. Supp. 2d 1181, 1185 n.4 (W.D. Wash. 2008).

T-Mobile also filed a Request for Judicial Notice, in which it asks the Court to take
judicial notice of a newspaper article, which purports to state when T-Mobile began to
provide service in California.  That request is DENIED.

United States District Court
For the Northern District of California

Programs Fee that T-Mobile elects to collect and retains." (*Id.*) T-Mobile explained that the

USF Fee "is not a tax or government assessment imposed directly on the customer," that

carriers "are permitted but not required to charge their customers for" the USF Fee, and how it

calculated the USF Fee. T-Mobile also noted that the USF Fee might change. (*Id.*) T-Mobile

provided a similar explanation of the RPF Fee and expressly stated that T-Mobile elected to

collect that fee and retained it to "recover our costs related to government mandates and

programs." (*Id.*) T-Mobile reiterated that statement later on the invoice. (*Id.* at T_M0000256.)

T-Mobile's 2005 invoices contain similar statements regarding both the USF Fee and the RPF

Fee. (*Id.* at T_M0000567.)

   **2.**    **Plaintiff Janda.**

   Janda signed a Service Agreement with T-Mobile on March 31, 2005, and cancelled his

service with T-Mobile on April 14, 2005. (SAC ¶ 29; Chang Decl., ¶ 3, Ex. 1 at T_M

0000015.) Janda alleges that when he contracted for service, the T-Mobile "representative

advertised the calling plan or rate plan [Janda] was purchasing as a plan for a specific monthly

charge, fee or price for up to a specific number of minute [and] filled out the blanks in the

standard form T-Mobile Service Agreement." (SAC ¶ 30.)

   The first page of Janda's Service Agreement states that the "[t]otal monthly recurring

charges for this line of service (*excluding taxes and surcharges*)" is $29.99. (*Id.* (emphasis

added).) The second page of Janda's Service Agreement contains a section captioned

"IMPORTANT CUSTOMER INFORMATION," and states that T-Mobile charges "a monthly

Regulatory Programs fee of 86¢ (plus tax) per line of service. This fee is not a government

required tax or charge." (Chang Decl., Ex. 1 at T_M0000015.) Janda's Service Agreement also

contains a section captioned "CUSTOMER ACCEPTANCE (Required)," that states:

> BY SIGNING THIS FORM OR ACTIVATING OR USING T-MOBILE
> SERVICE I ACKNOWLEDGE AND AGREE THAT:
>
> THIS IS MY CONTRACT WITH T-MOBILE USA, INC. FOR WIRELESS
> SERVICES. MY CONTRACT IS CALLED A "SERVICE AGREEMENT"
> AND IT INCLUDES THIS DOCUMENT, THE SEPARATE T-MOBILE
> TERMS AND CONDITIONS, AND MY RATE PLAN INFORMATION.
> THE T-MOBILE TERMS AND CONDITIONS ARE IN MY WELCOME
> GUIDE OR WERE OTHERWISE PROVIDED TO ME AT THE TIME OF
> SALE, MY RATE PLAN INFORMATION WAS PROVIDED TO ME AT

**United States District Court**
For the Northern District of California

THE TIME OF SALE.  BY SIGNING I ACKNOWLEDGE THAT I HAVE
RECEIVED AND READ THIS DOCUMENT, THE T-MOBILE TERMS
AND CONDITIONS, AND MY RATE PLAN INFORMATION.

(*Id.* (emphasis in original).)

The Terms and Conditions applicable to Janda's account, which are contained within T-Mobile's Welcome Guide, contain a section entitled "Taxes and Fees."  That section provides, in pertinent part:

> We invoice you for taxes, fees, and other charges (e.g., sale, use, excise, public utility and other taxes) levied by or remitted directly to federal state or local authorities, or foreign governments imposed on your or us as a result of providing the Service, your Unit, or Other Services (Taxes and Fees). We will determine, in our reasonable discretion, the Taxes and Fees you are responsible to pay and the amount of those Taxes and Fees, which may change or increase at any time without notice. ...
>
> *We may also bill you for:* a) a regulatory and administrative fee to cover costs related to federal and state mandates, including without limit fees or costs related to E-911, local number portability and number pooling (the amount or method of calculation may change at any time without notice to you) and b) *Federal Universal Service Fee Funds (FUSF).   The regulatory and administrative fee and FUSF are not taxes or government required charges.* We charge the FUSF based on a percentage of your wireless service charges. A contribution factor provided by the Federal Communications Commission (FCC) (which may change without notice) is one factor use to calculate the percentage.  We may impose the regulatory & administrative fee whether or not all or some services are used, or available to you, or in your location.

(Rummage Decl., ¶ 6, Ex. 5 at T_M0000044 (emphasis added).)[5]

Janda's invoices also contain a section in which T-Mobile states that although the USF Fees are "not taxes or government assessments imposed directly on the customer, these charges recover contributions we make to federal and state funds related to universal service. ... These charges change as contributions to the funds change."  (Chang Decl., ¶ 8, Ex. 3 at T_M0000005.)  T-Mobile also states that it "elect[s] to collect and retain the [RPF] Fee to help recover a portion of our costs incurred to satisfy certain government mandates and programs related to customers."  (*Id.; see also id.* at T_M000006.)

The Court shall address additional facts as necessary in its analysis.

---

[5]     The Terms and Conditions are located approximately 50 pages into T-Mobile's Welcome Guide.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

**ANALYSIS**

Plaintiffs allege that they contracted with T-Mobile to obtain wireless service for a set monthly fee, *e.g.* $29.99, but were billed more than that set monthly fee. (*See* Opp. at 3 ("The [T-Mobile] sales representative filled in the price of the service, but they were charged more.").) According to Plaintiffs, T-Mobile's practices are a "variant of a classic 'bait and switch' sales practice, i.e. advertising a specific service, for a set price, and then not giving the consumer the service for *that* price, but charging more." (*Id.* at 4:10-14 (emphasis in original).)

According to Plaintiffs, T-Mobile is "not required by law" to impose the USF Fee and the RPF Fee. Plaintiffs further allege that these fees are not taxes but, instead, are fees that T-Mobile created and imposed on its customers as a means to cover ordinary business expenses. Plaintiffs also allege that T-Mobile hid the USF Fee and RPF Fee in "its billing statements and made it appear as though [they were] a government tax imposed on the customer." (*Id.* ¶¶ 5-7.) Finally, Plaintiffs allege that T-Mobile increased the "amount, cost or percentage rate of the" USF Fee and the RPF Fee "without notifying the customer of the increase and without providing the customer with any additional consideration or services beyond the services already being provided under the contract." (*Id.* ¶ 8.)

**A.      Legal Standard Applicable to Motion to Dismiss.**

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. The complaint is construed in the light most favorable to the non-moving party and all material allegations in the complaint are taken to be true. *Sanders v. Kennedy,* 794 F.2d 478, 481 (9th Cir. 1986). The court, however, is not required to accept legal conclusions cast in the form of factual allegations, if those conclusions cannot reasonably be drawn from the facts alleged. *Clegg v. Cult Awareness Network,* 18 F.3d 752, 754-55 (9th Cir. 1994) (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986)). Conclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim upon which relief may be granted. *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 810 (9th Cir. 1988). Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), a plaintiff must do more than recite the elements of the claim and must

1   "provide the grounds of [its] entitlement to relief." *Bell Atlantic Corporation v. Twombly*, 127

2   S. Ct. 1955, 1959 (2007) (citations omitted).  The pleading must not merely allege conduct that

3   is conceivable.  Rather, plaintiffs must allege "enough facts to state a claim to relief that is

4   plausible on its face." *Id.* at 1974.

5   **B.      The CLRA Claim is Dismissed With Prejudice.**

6          T-Mobile argues that the Court should dismiss Plaintiffs' claims for damages under the

7   CLRA.  The Court agrees.  The Court previously ruled that Plaintiffs had not complied with

8   California Civil Code § 1782(a) and, thus, could not state a claim for damages.  The Court also

9   expressly stated that Plaintiffs should not include such a claim in the SAC.  (Nov. 7 Order at

10  10:16-17 (citing *Cattie v. Wal-Mart Stores*, 504 F. Supp. 2d 939, 949-50 (S.D. Cal. 2007);

11  *Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1195-96 (S.D. Cal. 2005)).)  The Court has

12  considered the additional authorities cited by Plaintiffs regarding notice under Section

13  California Civil Code § 1782, which were cited during the hearing.  *See In re Mattel, Inc. Toy*

14  *Lead Paint Prod. Liab. Lit.*, 588 F. Supp. 2d 1111 (C.D. Cal. 2008); *Galindo v. Financo*

15  *Financial, Inc.*, 2008 U.S. Dist. LEXIS 82773 (N.D. Cal. Oct. 3, 2008).  The Court stands by its

16  prior ruling to dismiss with prejudice the damages claims under the CLRA.  Notwithstanding

17  their failure to comply with the Court's directive, Plaintiffs concede that their recent attempt to

18  provide notice under the CLRA is defective.  (Opp. at 15:3-4.)  Plaintiffs also state that they are

19  choosing not to seek injunctive relief under the CLRA.  Accordingly, Plaintiffs' claims under

20  the CLRA are dismissed with prejudice.

21  **C.      The Section 17500 Claim is Dismissed With Prejudice.**

22         T-Mobile argues, in part, that Plaintiffs' Section 17500 claim should be dismissed

23  because: (1) Plaintiffs still do not identify with specificity the advertising at issue in this case

24  and (2) Plaintiffs do not allege facts sufficient to show that T-Mobile's statements are likely to

25  deceive a reasonable consumer.[6]

26  _____

27         [6]      T-Mobile also asserts that Plaintiffs have not alleged facts sufficient to
    establish causation or reliance and that both the Section 17500 and the Section 17200 claims
28  must be dismissed on this basis.  Plaintiffs argue that they can establish these elements by
    showing that the price of service is material to the objective reasonable consumer and

8

**United States District Court**
For the Northern District of California

1

### 1.    Plaintiffs Identify the Advertising with Specificity.

In order to meet the heightened pleading requirements of Rule 9(b), Plaintiffs must include allegations about the time, place, and content of the alleged misrepresentations, as well as an explanation as to why the statement or omission complained of is false or misleading. *See, e.g., Blake v. Dierdorff*, 856 F.2d 1365, 1369 (9th Cir. 1988).  Plaintiffs allege that the advertising is T-Mobile's practice "of representing to consumers the monthly fee, charge or price of service by filling out the 'Service Agreement,'" as well as the Service Agreement. Plaintiffs also allege that the charge for service actually was more than the price set forth on the face of the Service Agreement, because the T-Mobile representative did not disclose the amount of the USF Fee or the RPF Fee.  (SAC ¶¶ 19-27.)  According to Plaintiffs, the T-Mobile sales representatives followed this practice when they contracted for service in 2002 and 2005 respectively.  (*Id.* ¶¶ 28-30.)  The Court concludes that Plaintiffs have identified the advertising with the requisite degree of specificity to satisfy Rule 9.  Because that issue is distinct from whether the allegations state a claim for a violation of Section 17500, the Court now turns to that issue.

### 2.    The Advertising Is Not Misleading.

Section 17500 "prohibits the use of any untrue or misleading statement in selling real or personal property or personal services."  *People v. Dollar Rent-A-Car Systems, Inc.*, 211 Cal. App. 3d 119, 128 (1989).  Section 17500's prohibition against false advertising "extends to the use of false or misleading oral statements."  *Dollar Rent-A-Car*, 211 Cal. App. 3d at 128; *see*

---

through the use of a common sales pitch.  Because the Court concludes that Plaintiffs cannot establish that the advertisements in question are likely to deceive a reasonable consumer, the Court does not reach the issue whether Plaintiffs allege facts that are sufficient to support causation and reliance.  The Court notes, however, that although there is a split of authority on the issue, a majority of courts to have addressed the issue, including this one, conclude that under both Section 17200 and Section 17500, a plaintiff must establish *individual* reliance and causation.  *See Brazil v. Dell, Inc.*, 585 F. Supp. 1158, 1165 n.2 (N.D. Cal. 2008) (citing cases and noting that "[t]he California Supreme Court has taken for review several cases that may address the issue"); *In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1106 (N.D. Cal. 2008) ("[i]t is logical to require reliance on misrepresentations when a UCL claim is premised on allegations that the defendants engaged in fraudulent business practices"); *Laster*, 407 F. Supp. 2d at 1194 (dismissing Section 17200 and Section 17500 claims where plaintiffs had not alleged that they entered transaction as a result of allegedly false advertisements).

United States District Court
For the Northern District of California

1    *also Ford Dealers Ass'n v. Dept. of Motor Vehicles*, 32 Cal. 3d 347, 358 (1982) ("Section

2    17500 repeatedly has been interpreted so as to include within its reach oral statements made to

3    individual members of the public."). "California courts have noted that the FAL prohibits 'not

4    only advertising which is false, but also advertising which [,] although true, is either actually

5    misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.'"

6    *Laster*, 407 F. Supp. 2d at 1193 (quoting *Leoni v. State Bar*, 39 Cal. 3d 609, 626 (1985)).  In

7    determining whether statements are likely to deceive, the appropriate standard is "that of the

8    ordinary consumer acting reasonably under the circumstances." *Lavie v. Proctor & Gamble*,

9    105 Cal. App. 4th 496, 512 (2003).

10        Janda's Service Agreement states that the monthly service rate "*excludes* taxes and

11   surcharges." (Second Chang Decl., ¶ 6, Ex. 1.)  Under Plaintiffs' theory of the case, this

12   statement would have alerted Janda that T-Mobile would charge him more than the set monthly

13   fee.  Moreover, the Terms and Conditions provide that T-Mobile might bill Janda for "a

14   regulatory and administrative fee to cover costs related to federal and state mandates, including

15   without limit fees or costs related to E-911, local number portability and number pooling (the

16   amount or method of calculation may change at any time without notice to you) and b) Federal

17   Universal Service Fee Funds (FUSF)." (*Id.*).  The Terms and Conditions also provide that

18   "[t]he regulatory and administrative fee and FUSF are not taxes or government required

19   charges," explain how T-Mobile charges the fee, and note that the USF Fee may change without

20   notice. (*Id.*)  Thus, the advertising in question discloses the fact that T-Mobile would charge

21   these fees, that they are discretionary, and that they might increase at any time without notice.

22        Similarly, Singh's Service Agreement provides that "[a]ny applicable sales, use, excise,

23   public utility or other taxes, fees or regulatory costs, including without limitation E911-related

24   fees or costs, *or charges imposed on you or Us as a result of providing the Service or your Unit*

25   *("Taxes") will be added to your charges as permitted or required by law*." (2002 Service

26   Agreement ¶ 13 (emphasis added).)[7]  The USF Fee is a fee that is imposed on T-Mobile by the

27

28        [7]        At the time Singh contracted with T-Mobile, it did not charge the RPF Fee
     and, thus, with respect to Singh's false advertising claim, only the USF Fee is at issue.

1   FCC, and it is undisputed that T-Mobile is permitted by law to pass that fee on to its customers,

2   so long as it does not mark it up.

3       In support of their argument that they have stated a claim under Section 17500, Plaintiffs

4   primarily rely on *In re First Alliance Mortgage Co.*, 471 F.3d 977 (9th Cir. 2006), which

5   involved fraudulent lending practices for subprime mortgage loans.  In that case, which actually

6   addressed whether the defendant was liable for aiding and abetting First Alliance, First

7   Alliance's  loan officers employed "a standardized sales presentation to persuade borrowers to

8   take out loans with high interest rates and hidden high origination fees or 'points' or other

9   'junk' fees, of which the borrowers were largely unaware."  *Id.* at 985.  As the Ninth Circuit

10  stated, "[t]he key to the fraud was that loan officers would point to the 'amount financed' and

11  represent it as the 'loan amount,' disregarding other charges that increased the total amount

12  borne by the borrowers."  *Id.*

13      The Ninth Circuit also noted that First Alliance's "elaborate and detailed sales

14  presentation ... was unquestionably designed to obfuscate the true principal amount of the loan,"

15  that "[l]oan officers were taught to deflect attention away from things that consumers might

16  normally look at ... and the loan sales presentation was conducted in such a way as to lead a

17  consumer to disregard the high annual percentage rate ... when it was ultimately disclosed[.]"

18  *Id.*  The court rejected the argument that "the plaintiffs should have known better than to rely on

19  their loan officers' misrepresentations, because the fine print told 'a different story,'" because

20  "it was by design that the borrowers did not understand that the loan documents told a different

21  story."  *Id.* at 992.  In contrast, Plaintiffs do not allege facts supporting an inference that T-

22  Mobile's sales agents were taught to deflect a consumer's attention from the fact that the price

23  of the monthly service would include other fees and charges or that the sales pitch was designed

24  to obfuscate the fact that other fees would be added to the monthly price.  (*See, e.g.,* SAC ¶¶ 21,

25  24-25, 30.)

26      Plaintiffs also allege the manner in which these fees are disclosed is deceptive because

27  they are hidden within the fine print of the Service Agreements.  In the November 7 Order, the

28  Court stated that an allegation that T-Mobile disclosed the USF Fee and the RPF Fee in a

deceptive manner by "deliberately obscuring" those fees "within the fine print of the terms and conditions," if true, could support a Section 17200 claim.  (Nov. 7 Order at 12:19-22 (citing *Schnall v. The Hertz Corp.*, 78 Cal. App. 4th 1144, 1163-64 (2000)).)  Having considered Plaintiffs' allegations in the SAC, the Court finds that the facts in *Schnall* are distinguishable. In that case, the court addressed the manner in which the defendant, a rental car company, disclosed the amount of a refueling charge to its customers.  The court's decision was premised in part upon the fact that the contractual provisions at issue were incomprehensible and "needlessly complex."  *Schnall*, 78 Cal. App. 4th at 1163-65.  The same cannot be said for the contractual provisions at issue in this case.

Under *Twombly*, the pleading must not merely allege conduct that is conceivable. Rather, plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." 127 S.Ct. at 1974.  Having considered the allegations in Plaintiffs' SAC and accepting them as true, the Court concludes that Plaintiffs have not alleged facts sufficient to show that T-Mobile's advertising, as Plaintiffs have chosen to define it, is misleading or has the capacity, likelihood or tendency to deceive or confuse the public.  Because Plaintiffs have had numerous opportunities to amend this claim, the Court finds that granting Plaintiffs leave to amend would be futile.  Accordingly, this claim is dismissed with prejudice.

**D.      The Section 17200 Claim Is Dismissed With Prejudice.**

Pursuant Section 17200, "there are three varieties of unfair competition: practices which are unlawful, unfair or fraudulent."  *See Daugherty v. American Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 837 (2006); *Albillo v. Intermodal Container Services, Inc.*, 114 Cal. App. 4th 190, 206 (2003) (to state a UCL claim, a "plaintiff must establish that the practice is either unlawful (i.e., is forbidden by law), unfair (i.e., harm to victim outweighs any benefit) or fraudulent (i.e., is likely to deceive members of the public)").  T-Mobile moves to dismiss Plaintiffs' Section 17200 claim, in part, on the basis that: (1) Plaintiffs have not alleged facts sufficient to state a claim for fraudulent business practices; (2) Plaintiffs have not alleged facts

1   sufficient to state a claim for unlawful conduct; and (3) Plaintiffs have not alleged facts

2   sufficient to state a claim for unfair business practices.[8]

### 1.   Plaintiffs Have Not Stated a Claim Under the Fraudulent Prong.

4   For the reasons set forth above, the Court concludes that Plaintiffs have not stated a

5   claim under Section 17200 based on T-Mobile's advertising or the manner in which T-Mobile

6   presented its Service Agreements to consumers.  Plaintiffs also argue that T-Mobile's billing

7   practices are deceptive, because it represents that the USF Fee and the RPF Fee are taxes when

8   they are not.  For the reasons set forth above, Janda cannot make this claim.  His invoices

9   clearly disclosed the nature of the USF Fee and the RPF Fee.  (Chang Decl., ¶ 8, Ex. 3 at

10   T_M0000005, T_M0000009, T_M0000012.)  Singh's invoices also contain an clear explanation

11   of the RPF Fee.  (*See, e.g., id.*, ¶ 12, Ex. 7 at T_M0000255.)  With respect to the USF Fee, T-

12   Mobile's invoices in 2002 state that "Taxes" include "federal state and local taxes *and fees that*

13   *T-Mobile* is required, *or permitted*, to collect" from the consumer.  (Breskin Decl., ¶ 5,  Ex. 4

14   (emphasis added).)  It is undisputed that T-Mobile is permitted to collect the USF Fee from the

15   consumer and its invoices accurately state that fact.  The Court concludes that Plaintiffs have

16   not alleged facts sufficient to state a claim under the fraudulent prong.

### 2.   Plaintiffs Have Not Stated a Claim Under the Unlawful Prong.

18   "Unlawful business activity proscribed under section 17200 includes anything that can

19   properly be called a business practice and that at the same time is forbidden by law."  *Farmers*

20   *Ins. Exchange v. Superior Court*, 2 Cal. 4th 377, 383 (1992) (internal quotations and citations

21   omitted).  "[A]n action based on ... [S]ection 17200 to redress an unlawful business practice

22   borrows violations of other laws and treats these violations, when committed pursuant to

23   business activity, as unlawful practices independently actionable."  *Id.* (citations and internal

24   quotations omitted).

25   Because the Court has concluded that Plaintiffs cannot state a CLRA claim or a claim

26   under Section 17500, these statutes cannot serve to support a claim under the "unfair" prong of

27

28   ───────────────

   [8]      *See* note 6, *supra*.

13

United States District Court

For the Northern District of California

United States District Court
For the Northern District of California

1   Section 17200.[9]  Plaintiffs also allege that they have alleged facts sufficient to establish a

2   violation of 47 U.S.C. § 201(b), which provides, in pertinent part, that "[a]ll charges, practices,

3   classifications, and regulations for and in connection with such communication service, shall be

4   just and reasonable, and any such charge, practice, classification, or regulation that is unjust or

5   unreasonable is declared to be unlawful."  For the reasons set forth in this Order, the Court

6   concludes that Plaintiffs have not alleged in any practices that would fall within the scope of

7   Section 201(b).  The Court concludes that Plaintiffs have not alleged facts sufficient to state a

8   claim under the unlawful prong.

9           **iii.       Plaintiffs Have Not Stated a Claim Under the Unfair Prong.**

10          "An unfair business practice occurs when it offends an established public policy or when

11  the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to

12  consumers."  *Speigler v. Home Depot U.S.A.*, 552 F. Supp. 2d 1036, 1045 (C.D. Cal. 2008)

13  (internal brackets and quotations omitted).  The California Supreme Court has held that, "in the

14  context of an unfair competition claim brought by a competitor, ... 'any finding of unfairness ...

15  be tethered to some legislatively declared policy.'"  *Speigler*, 552 F. Supp. 2d at 1045 (quoting .

16  In *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 185

17  (1999).)  Prior to the *Cel-Tech* ruling, courts applied a balancing test, in which a court weighed

18  "the utility of the defendant's conduct against the gravity of the harm to the alleged victims."

19  *Motors Inc. v. Times Mirror Co.*, 102 Cal. App. 3d 735, 740 (1980).  Because the *Cel-Tech*

20  court expressly limited its holding to competitor lawsuits, the appropriate test to determine

21  whether a practice is "unfair" in a consumer case, under California law is uncertain.  *See*

22  *Speigler*, 552 F. Supp. 2d at 1045.  The Court concludes that under either test, Plaintiffs have

23  not alleged facts to show that T-Mobile's conduct is unfair.

24  _____

25          [9]       Plaintiffs also attempt to rely on an FCC Policy Statement to establish this
    claim, which is attached as Exhibit B to the SAC.  As set forth in the press release
26  accompanying that statement, the FTC and the FCC "encourage[d]" industry to adhere to the
    standards that were offered therein, which were to provide guidance to carriers.  Plaintiffs
27  have not established that this Policy statement carries the force of law.  Accordingly, the
    Court concludes Plaintiffs cannot rely on it to establish a UCL claim for unlawful conduct.
28  *See, e.g., Syncor Int'l Corp. v. Shalala*, 127 F.3d 90, 94 (D.C. Cir. 1997) (noting that "[a]n
    agency policy statement does not seek to impose or elaborate or interpret a legal norm").

14

United States District Court

For the Northern District of California

1    First, Plaintiffs have not alleged facts sufficient to show that T-Mobile's conduct

2  violates a "legislatively declared policy." *Id.* The Court also concludes that application of the

3  balancing test does not save Plaintiffs' claims. In the *Speigler* case, the district court concluded

4  that the plaintiffs had not stated a claim for unfair practices based upon alleged

5  misrepresentations with respect to contractual terms. The Court has concluded that T-Mobile

6  was permitted to charge the USF Fee and the RPF Fee and has concluded that Plaintiffs have

7  not identified a false or misleading statement allegedly made by T-Mobile. As such, the Court

8  concludes that Plaintiffs have failed to state a claim under the unfairness prong. *Speigler*, 552

9  F. Supp. 2d at 1046.

10    Because Plaintiffs have had numerous opportunities to amend this claim, the Court finds

11  that granting Plaintiffs leave to amend would be futile. Accordingly, this claim is dismissed

12  with prejudice.

13  **E.    The Breach of Contract Claim is Dismissed With Prejudice.**

14    To state a claim for breach of contract, Plaintiffs must allege: (1) the existence of a

15  contract; (2) that they performed or had an excuse for not-performing under the contract; (3)

16  that T-Mobile breached the contract; and (4) that they were damaged. *See, e.g., First*

17  *Commercial Mortgage Co. v. Reece*, 89 Cal. App. 4th 731, 745 (2001). T-Mobile's challenge

18  primarily focuses on third element. However, T-Mobile also argues that Plaintiffs failed to

19  comply with a pre-litigation notice provision and argues that Singh's claims are barred by a

20  contractual limitations period.

21    Plaintiffs allege that T-Mobile breached its contract by charging the USF Fee and the

22  RPF Fee and by "by increasing the 'USF-RPF Fee' during the contract period," when "[n]o

23  additional consideration or services were provided by defendant to justify" these increased fees

24  and by not providing service at a set rate. (SAC ¶¶ 133-135.)[10] For the reasons set forth above,

25

26    [10]    When it addressed this claim in its November 7 Order, the Court the Court
27  noted that it did not have a complete copy of Janda's contract, because T-Mobile had not
    included the rate plan. T-Mobile has submitted a declaration explaining what that the Rate
    Plan "refers to the basic terms of a customer's agreement, such as the number of minutes per
28  month and the base price for service each month." (Declaration of Jennifer Erickson, ¶ 3,
    Ex. A.) The Court is satisfied that it now has all Janda's complete contract.

15

United States District Court

For the Northern District of California

1   the Court finds that Plaintiffs cannot establish that T-Mobile breached its contract, because the

2   contracts clearly stated that it would charge them a monthly fee, plus additional charges. *See*

3   *Lowden v. T-Mobile U.S.A.*, 2009 WL 537787 at *2 (W.D. Wash. Feb. 18, 2009) (finding that

4   T-Mobile did not breach 2002 Service Agreement by charging USF Fee and RPF fee).

5          Singh also alleges that T-Mobile breached its contract by increasing the USF Fee

6   without notice. (*Id.* ¶ 134.) The Court finds that Singh has alleged facts that would be

7   sufficient to support this claim. However, it is barred by Singh's failure to bring the claim

8   within the one year period required by his contract. Plaintiffs argue that T-Mobile has waived

9   this defense. However, T-Mobile preserved this defense in its answer to the First Amended

10  Complaint. (Answer, § IX ¶¶ 2, 6, 11.) Although T-Mobile did not assert the defense in

11  connection with its earlier motion, it was not required to do so. A motion to dismiss under Rule

12  12(b)(6) is a non-waivable motion. The Court also finds Plaintiffs reliance on *City of Hollister*

13  *v. Monterey Ins. Co.*, 165 Cal. App. 4th 455 (2008) to be inapposite. In that case, the court

14  concluded that the defendant should be precluded from asserting compliance with a contractual

15  condition precedent as a defense, because it had impeded the plaintiff's efforts to comply with

16  that condition. *Id.* at 491. There is no indication in this case that T-Mobile took any action to

17  preclude Singh from filing suit within the one year period required by the Order. The Court

18  also rejects Plaintiffs' argument that the one-year limitations period is substantively

19  unconscionable and should not be enforced. *See, e.g., Soltani v. W & So. Life Ins. Co.*, 258 F.3d

20  1038, 1044 (9th Cir. 2001); *cf. Feldman v. Google, Inc.*, 513 F. Supp. 2d 239, 243 (E.D. Pa.

21  2007).

22         Accordingly, the breach of contract claim is dismissed and, because the Court finds that

23  it would be futile to grant Plaintiffs leave to amend, the dismissal is with prejudice.

24  //

25  //

26  //

27  //

28  //

16

1    //

United States District Court

For the Northern District of California

1

**CONCLUSION**

2          For the foregoing reasons, T-Mobile's motion to dismiss the Second Amended

3   Complaint is granted, without leave to amend.  A separate judgment shall issue, and the Clerk is

4   directed to close the file.

5          **IT IS SO ORDERED.**

6   Dated: March 13, 2009                                    _____

7                                                            JEFFREY S. WHITE
                                                             UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California